NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS DOMINGUEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COSTCO WHOLESALE and COSTCO ) <br> WHOLESALE CORPORATION, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.: 05-5717 (JLL) <br><br> OPINION |

For Plaintiff: Alan L. Krumholz (*Krumholz Dillon PA*)
For Defendant: Christopher H. Lowe (*Seyfarth Shaw, LLP*)

**LINARES, District Judge.**

This matter comes before the Court on Defendant Costco Wholesale Corp.'s[1] ("Defendant" or "Costco") motion for summary judgment [CM/ECF #27] on the Amended Complaint of Plaintiff Carlos Dominguez ("Plaintiff" or "Dominguez").  No oral argument was held.  Fed. R. Civ. P. 78.  For the reasons set forth in this Opinion, Defendant's motion for summary judgment is granted.

## INTRODUCTION

Costco employed Dominguez as a loss prevention agent in its Wharton, New Jersey location from May 26, 2004 until June 17, 2005. (Def. 56.1 Statement ¶¶ 19, 71.) Costco loss prevention agents apprehend shoplifters, perform security checks, and conduct investigations.

---

[1] Plaintiff's Amended Complaint in Superior Court brought suit against "Costco Wholesale" and "Costco Wholesale Corporation."  As Defendants briefs refer only to "Costco Wholesale Corporation," this Court will employ only the latter term to refer to all defendants in the instant action.

(Id. ¶ 27.) Plaintiff was terminated from Costco for accumulating excessive written discipline notices, known at Costco as "counseling notices." (Id. ¶¶ 63-71.)

A.    **Plaintiff's Investigations**

The investigations relevant to his claim are those involving General Warehouse Manager Walter Leonhard ("Leonhard"), Assistant Warehouse Manager Marc Cibellus ("Cibellus"), Administrative Manager Gelisa Torres, Front End Assistant Manager Maria Torres.  Dominguez also claims that his reporting of safety violations are relevant to his claim.

Dominguez initiated an investigation of Gelisa Torres because he suspected that she was taking extended lunch breaks of three to four hours, characterized by Dominguez as "time theft." (Pl. 56.1 Statement ¶ 7a.)  Dominguez states that he told both his supervisor, Terence Berry ("Berry"), Berry's supervisor, James Holmes ("Holmes"), and Gelisa Torres about this investigation. (Id. ¶ 8a, 14.)

Plaintiff investigated Leonhard and Cibellus for mishandling "demo" merchandise. (Id. ¶ 12a.)  According to Dominguez, Leonhard was removing merchandise from the Wharton location for charitable donation to a church. (Id.)  Cibellus was implicated by Dominguez for approving of this activity. (Id.)  Dominguez reported this investigation to Berry. (Id. ¶ 12d.)

Dominguez investigated Maria Torres for selling motion picture DVDs in competition with Costco on Costco premises. (Id. ¶¶ 21a-25.)  Dominguez made Berry aware of this investigation. (Id. ¶ 20a.)

B.    **The Counseling Notices**

Dominguez received five counseling notices under Costco's employee discipline policy. (Def. 56.1 Statement ¶¶ 40-60.)  Costco's policy on counseling notices states that an employee may be terminated after receiving four notices in any six-month period. (Id. ¶ 62.)

Dominguez received a counseling notice from Berry on January 6, 2005, for failing to follow Costco policy in a shoplifting apprehension. (Id. ¶ 40.) He received a second counseling notice on March 25, 2005, for three instances of tardiness in a single month. (Id. ¶ 43.) This notice was also given to Dominguez by Berry. (Id.)

Dominguez's third counseling notice was for excessive loitering and personal conversations. (Id. ¶ 48.) He received this notice from Gelisa Torres. (Id.) During the conversation concerning the counseling notice, the discussion became heated, and Dominguez alerted Torres that he was investigating her; Dominguez avers that Torres then stated that she would have him fired before his investigation was concluded. (Pl. 56.1 Statement ¶ 14.)

A fourth counseling notice followed on May 23, 2005; it was issued because Dominguez was tardy seven times in May of 2005. (Def. 56.1 Statement ¶ 53.) Although Dominguez claims that the time-clock system at the Wharton location was often out of service, and that loss prevention agents were given some flexibility with respect to lateness, he does not challenge the fact that the counseling notice issued or that he was, on some occasions, late to work. (Id. ¶ 53; Pl. 56.1 Statement ¶¶ 11b, 11d, 11f.)

Dominguez received his fifth and final counseling notice on June 14, 2005, for using his cell phone while moving customers toward the checkout area in preparation for closing the store. (Def. 56.1 Statement ¶ 60.) General Warehouse Manager Lorry Janus ("Janus"), Leonhard's successor in that position, administered the counseling notice. (Id.)

**C.    Termination**

After Janus reviewed Dominguez's personnel file, she recommended that Dominguez be terminated for accumulating excessive counseling notices to Vice President Yoram Rubanenko ("Rubanenko"). (Id. ¶¶ 63-65.) Rubanenko agreed, and approved Dominguez's termination. (Id.

¶¶ 63-71.)

Dominguez filed a Complaint on October 31, 2005, seeking relief under New Jersey's Conscientious Employee Protection Act. (Compl. ¶ 8.) Defendant removed to this Court on December 7, 2005, and filed the instant motion for summary judgment on July 28, 2008.

## DISCUSSION

### A.   Legal Standard on Summary Judgment

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### B.   Plaintiff's CEPA Claim

New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1, et seq., was enacted to protect employees who report illegal or unethical actions in the workplace, and also to encourage such reporting.  Fleming v. Correctional Healthcare Solutions, Inc., 751 A.2d 1035, 1038-39 (N.J. 2000).  New Jersey courts apply the familiar McDonnell-Douglas burden-shifting framework in evaluating claims under the statute.  In order to state a prima facie retaliation case under CEPA, a plaintiff must prove by a preponderance of the evidence that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. § 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

Massarano v. New Jersey Transit, 948 A.2d 653, 662 (N.J. Super. Ct. App. Div. 2008) (quoting Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003)).  The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for taking the employment action, after which it is the employee's burden to demonstrate pretext by a preponderance of the evidence.  Klein v. University of Medicine and Dentistry, 871 A.2d 681, 687 (N.J. Super. Ct. App. Div. 2005).

Costco maintains that Dominguez cannot make out a prima facie case for CEPA retaliation because he cannot establish that his investigations were lawfully protected whistleblowing activities, and also because he also cannot establish causation.  (Def. Br. at 6-7.) In response, Plaintiff contends that his investigations of time theft and copyright violation were whistleblowing activities, and that his investigations caused the retaliatory counseling notices issued to him by management.  (Pl. Opp. Br. at 16-18.)

This Court finds, however, that Dominguez's argument as to causation is deficient at

summary judgment.  Although he points to no record evidence in support, Dominguez posits that the prior warehouse supervisor, Leonhard, "would likely" have communicated to the warehouse supervisor at the time of Dominguez's termination, Janus, that managers and supervisors were engaging in misconduct.  (Pl. Opp. Br. at 18.)  Dominguez claims that if this Court does not find that the knowledge of Leonhart should be imputed to Janus, then the managers Dominguez was investigating would benefit from their wrongdoings, and points to several opinions concerning retaliation under federal law in support of this position. (Id.)  Dominguez's argument is unpersuasive.

The record discloses that Dominguez accumulated five counseling notices within six months of employment at Costco, and that Costco's stated policy was that an employee was subject to termination if he accumulated four counseling notices within a six month period.  (Def. 56.1 Statement ¶ 62.)  The decision to terminate Dominguez was made by Janus and Rubanenko upon a review of Dominguez's employment file, and Dominguez does not point to any non-speculative evidence of Rubanenko or Janus knowing of Dominguez's investigations of managers or supervisors.  (Pl. Opp. Br. at 18.)

The federal opinions cited by Dominguez do demonstrate that under certain federal laws, constructive knowledge can be imputed to management in whistleblower cases.  These cases, however, are distinguishable.  In Deremer v. Gulfmark Offshore, Inc. the ALJ ruled that knowledge on the part of lower-level managers could be imputed to upper-level managers in the context of the Sarbanes-Oxley Act.  No. 2006-SOX-2, 2007 DOLSOX Lexis 46, at *117  (Dep't of Labor June 29, 2007).  That ruling, however, did not pertain to causation; it only addressed the required element of an employer's knowledge of protected activity.  Deremer, No. 2006-SOX-2, 2007 DOLSOX Lexis 46, at *117-18.  See also Platone v. Atlantic Coast Airline Holdings, Inc.,

No. 2003-SOX-27, 2004 DOLSOX Lexis 69, at *73-75 (Dep't of Labor Apr. 30, 2004) (same). Both Demerer and Platone rely on Frazier v. Merit Systems Protection Board's ruling that under the Civil Service Reform Act of 1978, knowledge could be imputed from lower-level bureaucrats to agency heads in the retaliation context. 672 F.2d 150, 166-68 (D.C. Cir. 1982). The Court of Appeals for the District of Columbia in that case found that a federal statute governing the delegation of responsibilities made actual knowledge on the part of an agency head unnecessary in the retaliation context. Frazier, 672 F.2d at 166. Frazier is inapposite to the instant context. Plaintiff points to no New Jersey statute that addresses the effect of delegation by a manager in a private corporation on personnel decisions.

Plaintiff's attempt to compare his CEPA claim to a Sarbanes-Oxley retaliation case is also a bridge too far. Sarbanes-Oxley requires a much lower showing of causation than in a CEPA claim: a Sarbanes-Oxley claim requires merely that the protected activity was "a contributing factor" in the adverse employment decision, not that the protected activity has a causal connection to the decision. Compare Deremer, No. 2006-SOX-2, 2007 DOLSOX Lexis 46, at *85 (contributing factor) with Massarano, 948 A.2d at 662 (causal connection). New Jersey courts require that plaintiff demonstrate more when setting forth a CEPA claim: a "plaintiff can prove causation by presenting either direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation." Zaffuto v. Wal-Mart Stores, Inc., 130 F. App'x 566, 569 (3d Cir. 2005); Bocobo v. Radiology Consul. of S. Jersey, P.A., No. 02-1697, 2005 WL 3158053, at *3-4 (D.N.J. Nov. 21, 2005). This is not a burden that can be met by speculation: a plaintiff must demonstrate a factual nexus between the protected activity and the retaliatory employment action. Wheeler v. Township of Edison, No. 06-5207, 2008 WL 1767017, at *9 (D.N.J. Apr. 15, 2008); Hancock v. Borough of Oaklyn, 790 A.2d 186, 194 (N.J.

Super. Ct. App. Div. 2002).

Dominguez's constructive knowledge argument does not suffice to demonstrate a factual nexus between his investigations and his termination.  He presents an argument that knowledge of his investigations should be imputed to Janus and Rubanenko, rather than even circumstantial evidence of causation exposed by discovery.  (Pl. Opp. Br. at 18.)  The record is empty as to Dominguez's investigations spurring Janus and Rubanenko into action.  Dominguez's argument does not suffice to demonstrate the causation Dominguez must satisfy in order to set forth a prima facie case.  Bocobo, No. 02-1697, 2005 WL 3158053, at *3-4.  In the absence of any record evidence supporting causation, this Court finds that there is no material fact at issue with regard to causation, and that summary judgment must be granted to Costco on Dominguez's CEPA claim.

## CONCLUSION

For the forgoing reasons, this Court grants the motion for summary judgment by Defendant.  An appropriate Order accompanies this Opinion.

DATED: March 9, 2009                                /s/ Jose L. Linares
                                                    United States District Judge